Kristine M. Akland
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 7274
Missoula, MT 59807
(406) 544-9863
kakland@biologicaldiversity.org

Andrea Zaccardi (*pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 469
Victor, ID 83455
(303) 854-7748
azaccardi@biologicaldiversity.org

*Attorneys for Plaintiffs Center for
Biological Diversity, Yaak Valley Forest
Council, and WildEarth Guardians*

Timothy M. Bechtold
BECHTOLD LAW FIRM
P.O Box 7051
Missoula, MT 59802
(406) 721-1435
tim@bechtoldlaw.net

*Attorney for Plaintiffs Alliance for the
Wild Rockies and Native Ecosystems
Council*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ALLIANCE FOR THE WILD ROCKIES, YAAK VALLEY FOREST COUNCIL, WILDEARTH GUARDIANS, and NATIVE ECOSYSTEMS COUNCIL,<br><br>Plaintiffs, | CV-22-91-M-DLC-KLD<br><br>**SUPPLEMENTAL REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

|  |  |
|---|---|
| vs.<br><br>U.S. FOREST SERVICE; LEANNE MARTEN, Regional Forester of U.S. Forest Service Region 1; CHAD BENSON, Supervisor of the Kootenai National Forest; and U.S. FISH AND WILDLIFE SERVICE,<br><br>     Defendants. |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................4

I.     HISTORY ..................................................................................................5

II.    ARGUMENT...............................................................................................6

    a.  Excluding known illegal road use in access metric calculations is contrary to best available science. ...........................................................6

    b.  FWS's decision to exclude illegal roads in access metric calculations is arbitrary and capricious because it ignores an important aspect of the problem - that illegal road use is a permanent issue. ...............................11

        i.  Illegal roads in the Knotty Pine project area are a permanent problem..............................................................................................11

        ii.  Defendants fail to explain why FWS diverged from USFS methodology....................................................................................14

        iii.  Illegal roads are not "de facto" included in access metrics. ..........16

    c.  Even if excluding illegal roads from calculations is appropriate, FWS's "qualitative" analysis is still inadequate.................................................17

III.   CONCLUSION..........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Bradford*, 856 F.3d 1238 (9th Cir. 2017) .....................8

*All. for the Wild Rockies v. Gassman*, 678 F. Supp. 3d 1249 (D. Mont. 2023).......14

*Am. Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013 (9th Cir. 1984) ...........................10

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001)...................................................10

*Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999 (D. Mont. 2018) ..........14

*Ctr. for Biological Diversity v. U.S. Forest Serv.,* 687 F. Supp. 3d 1053 (D. Mont. 2023) ............................................................................................... 6, 12, 17

*FCC v. Fox Television Stations*, *Inc.*, 556 U.S. 502 (2009) ....................................8

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ...................................10

*Swan View Coal. v. Haaland*, No. CV 22-96-M-DLC, 2024 WL 3219206 (D. Mont. June 28, 2024)...................................................................................13

**Statutes**

16 U.S.C. § 1536(a)(2)...............................................................................7

**Regulations**

50 C.F.R. § 402.14(g) ................................................................................17

50 C.F.R. § 402.14(h)(1)(ii)-(iii) .............................................................17

## I.    HISTORY

In 2022, Plaintiffs raised claims under the National Environmental Policy Act (NEPA), National Forest Management Act (NFMA), and Endangered Species Act (ESA). *See* Doc. 30 at 19 *et seq.* Specifically, Plaintiffs argued that the Forest Service (USFS) fails to demonstrate that the Knotty Pine Project (Project) complies with the Kootenai National Forest Plan grizzly bear access standards because it fails to adequately consider the known illegal roads in the Project area in violation of NEPA and NFMA. *Id.* Plaintiffs' ESA claims similarly allege that FWS fails to provide a detailed discussion of effects by failing to consider illegal roads in road density and core calculations.

This Court enjoined the Project and found that Plaintiffs would likely succeed on their ESA claims that the Project BiOp failed to adequately consider illegal road impacts on grizzly bears. Doc. 89 at 20-30.

FWS later issued an Amended BiOp. FWS6518. Like the Original BiOp, the Amended BiOp did not include illegal roads in its grizzly bear metric calculations. Instead, the Amended BiOp determined that analyzing illegal roads is best done through a "qualitative" analysis. This Court then requested supplemental briefing. Doc. 106 at 2.

In its injunction order, this Court did not address Plaintiffs' NEPA and NFMA claims, which are nearly identical to those raised and ruled upon in *Center*

*for Biological Diversity v. U.S. Forest Service,* 687 F.Supp.3d 1053, 1082 (D.

Mont. 2023) ("*Black Ram*"), wherein this Court found that the USFS's analysis of

illegal roads failed to demonstrate compliance with the same Forest Plan standard.

The Amended BiOp has no effect on those claims, which are fully briefed and ripe

for this Court's review.

The issue presently before the Court is whether the Amended BiOp's

"qualitative" analysis of illegal road use satisfies its duty under the ESA and the

Administrative Procedures Act (APA). Because BMU 12 barely meets the road

density and core thresholds prior to implementation of this Project, FS2356, the

inclusion of the known illegal roads would cause exceedance of those thresholds,

resulting in take of the species. FWS1562, 1564. FWS's reasoning for excluding

illegal roads from metric calculations is contrary to best available science and

arbitrary and capricious. Further, even if the "qualitative analysis" were the proper

method to analyze illegal roads, the analysis in the Amended BiOp is arbitrary and

capricious and contrary to best available science.

## II.    ARGUMENT

### a. Excluding known illegal road use in access metric calculations is contrary to best available science.

Defendants' decision excluding known illegal road use from metric

calculations and instead "qualitatively" analyzing illegal roads violates ESA's best

available science requirement. *See* 16 U.S.C. §1536(a)(2). Defendants do not dispute that the Interagency Grizzly Bear Committee Taskforce Report (IGBC Report), FWS5384, is the best available method for evaluating the effects of motorized access on grizzly bears. Doc. 117 at 13. The IGBC Report "provide[s] a consistent approach to motorized access management" that requires the analysis of road density and core and "establish[es] standardized definitions for roads" to be used when calculating density and core. FWS5384 (definitions for access route scenarios "allow for consistency among various land management units in describing effects of human access routes on grizzly bear habitat use"); FWS5387 ("provide[s] a structured and consistent approach [methodology] to the analysis and documentation of effects of motorized access on grizzly bear habitat"). These definitions and procedures, as FWS concedes, are incorporated into the Forest Plan and were used by Wakkinen and Kasworm (1997) when setting research benchmarks. FWS6438-39; FWS1477. Thus, FWS concedes that the best way to analyze and document effects of motorized access on grizzly bears is by applying the definitions and procedures outlined in the IGBC Report.

The IGBC Report definitions state that any road not "effectively" reclaimed/obliterated, which includes roads with breached barriers or new user-created roads, must count toward the Total Motorized Road Density (TMRD) or Open Motorized Road Density (OMRD) calculation and may decrease core.

FWS5386; *see also* Doc. 30 at 27. Illegal roads are roads that are not "effectively" reclaimed or obliterated. *All. for the Wild Rockies v. Bradford*, 856 F.3d 1238, 1243 (9th Cir. 2017); *see also* Doc. 89 at 12-13. Therefore, best available science requires illegal roads to be included in road density and core calculations when determining impacts to grizzly bears. There is no scientific support for FWS's qualitative analysis approach.

There are two primary reasons why it is important to include illegal roads in road density and core calculations. First, the road density and core benchmarks set by Wakkinen and Kasworm (1997) were incorporated into the Forest Plan BMU standards. FS2341; *see* Doc. 30 at 13. FWS has determined that when benchmarks are exceeded, the "reproductive capacity of female grizzly bears may be compromised." FWS1476; *see also* FWS1567 (Forest Plan BiOp's "no jeopardy" conclusion is based, in part, on implementation of these standards). If FWS excludes roads that should be included according to IGBC definitions, FWS diverges from IGBC's "consistent approach," FWS5384, and the Project's impacts on grizzly bears are not adequately analyzed.[1]

Second, and most worrisome, is that despite Defendants' claim that "no instances of illegal motorized access. . . could impact metrics" in the Project area,

---

[1] This should also be considered a "change in position" that requires a "reasoned explanation" under *FCC v. Fox Television Stations*, *Inc.*, 556 U.S. 502, 515 (2009).

Doc. 117 at 12, the Amended BiOp all but concedes that there *are* illegal roads in the Project area that *do* impact road density, core, and high-quality seasonal habitat:

> *Very few* of the points where illegal motorized access has occurred or allegedly occurred have been in areas that are modeled high quality spring, summer, or fall habitat for grizzly bears. In addition, *most* of the illegal access that has occurred or allegedly occurred in BMU12 and *most* of the areas where it may be more feasible to occur (e.g. areas with flat ground that is more prone to illegal off-road travel), are located west of Pine Creek and/or adjacent to the highways and developed areas within the action area.

FWS6544 (emphasis added); *see also* FWS6544-45 (characterizing illegal road use in the project area as "*generally* within areas already heavily influenced by legal open roads, *generally* outside of areas that provide secure habitat for grizzly bears, *generally* outside of areas that provide high quality seasonal habitats for grizzly bears, and *mostly* outside of the area where female grizzly bears are most known to occur"). These statements indicate that FWS knows at lease *some* illegal roads will impact metric calculations, which means that thresholds set for BMU 12 by the Forest Plan and Forest Plan BiOp are likely exceeded. FS2356; FWS1561. FWS also fails to consider that the reason why illegal road use is "*mostly* outside of the area where female grizzly bears are most known to occur" is because grizzly bears are likely avoiding those areas due to the illegal roads.

Defendants claim that the IGBC Report allows them to exclude illegal roads based on the Report's statement that "[r]outes not used in calculations will be

identified and the rationale for exclusion documented." FWS5387; Doc. 117 at 13-14; Doc. 115 at 4-5. However, the IGBC Report explicitly requires the inclusion of illegal roads in metric calculations. *See also* Access Amendments, FS2341, and Wakkinen and Kasworm, FWS5402 (same). Thus, FWS's unsupported interpretation is incorrect because it would create both an internal conflict in the IGBC's Reports and conflict with other best available science. Even so, the Amended BiOp's discussion of illegal roads does not address this conflict or even mention IGBC's statement regarding documenting excluding routes. *See* FWS6546-49. Moreover, this Court has already determined that this rationale "appears to change course from previously applied methods and standards without supplying a reasoned explanation for doing so." Doc. 89 at 30.

Finally, Defendants argue that FWS deserves deference when determining a methodology to analyze illegal roads. However, deference is not warranted when the agency's decision is arbitrary and capricious or contrary to law. *Brower v. Evans*, 257 F.3d 1058, 1067, 1065 (9th Cir. 2001); *see also Am. Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013, 1016-17 (9th Cir. 1984); *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2269-73 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). FWS does not enjoy deference here because as explained above, FWS's determination contradicts best available science, as embodied by the IGBC

Guidelines. And, as explained below, FWS's determination is arbitrary and capricious and ignores evidence before the agency. The Amended BiOp's failure to include illegal road use in metric calculations therefore violates the ESA and the APA.

> **b. FWS's decision to exclude illegal roads in access metric calculations is arbitrary and capricious because it ignores an important aspect of the problem - that illegal road use is a permanent issue.**

As explained in Plaintiffs' Supplemental Brief, Doc. 110, FWS's rationale for excluding illegal roads from metric calculations is arbitrary and capricious. Doc. 110 at 4, 6-10. Specifically, FWS's claims – that illegal roads are "temporary" and "short term," that including illegal roads is an "inherently wrong" assumption, and that illegal roads are "de facto" included in access metrics – all ignore an important aspect of the problem: Even if USFS fixes an individual illegal road, the record indicates that new or different illegal roads appear regularly, resulting in continuously more roads on the ground than the FWS and USFS consider in calculations. *See* FWS1312; FWS929-30; FWS932; Doc. 59-1 at 8-9; FWS7542, FWS7544; *also see* Doc. 89 at 24-25. Defendants' responses miss the mark.

> **i. Illegal roads in the Knotty Pine project area are a permanent problem.**

Defendants argue that FWS properly excluded illegal roads from metrics based on its determination that the Knotty Pine illegal roads are "temporary and short term." Doc. 117 at 8-10. Yet, Defendants fail to address this Court's conclusion that the temporary nature of illegal roads in the Project area has no bearing on whether they should be included in calculations. Doc. 89 at 25 (citing *All. for the Wild Rockies v. Probert,* 412 F.Supp.3d 1188, 1205 (D. Mont. 2019)); *see also Black Ram*, 687 F.Supp.3d at 1081. Defendants ignore this Court's logical reasoning that illegal road use in the Project area is an ongoing, permanent issue. Defendants provide no legal authority that allows FWS to continue to conclude that illegal roads do not "constitute a permanent condition for the purposes of calculation the access metrics." Doc. 117 at 8.

Regarding Defendants' argument that *Probert* and *Bradford* are "not persuasive" because they only apply in cases regarding bears outside the recovery zone ("BORZ") standards, Doc. 117 at 16-17, this Court has already determined that the holdings of *Bradford* and *Probert* apply to cases within the Recovery Zone. Doc. 89 at 25. Also, Defendants' summaries of *Bradford* and *Probert*, Doc. 117 at 16-17, are inconsistent with the case holdings. *See* Doc. 89 at 11-13.

Defendants also argue the Amended BiOp is consistent with *Probert* and *Bradford* because FWS determined that the illegal road use is "temporary and short term" and does not "constitute a permanent condition for the purposes of

calculating the access metrics." Doc. 117 at 8. Again, this Court has already acknowledged, based on evidence, that "the ongoing chronic problem of ineffective closures and unauthorized motorized access *is permanent.*" Doc. 89 at 25 (emphasis added); *Swan View Coal. v. Haaland*, CV 22-96-M-DLC, 2024 WL 3219206 *11 (D. Mont. June 28, 2024) ("The Court has also squarely rejected the argument that unauthorized motorized use is 'spatially disparate and temporary,' concluding that such use and its effects, are actually permanent."). Thus, excluding illegal roads from calculations because they are "spatially disparate and temporary" is contrary to the evidence and thus arbitrary and capricious. *Id.*

Additionally, Defendants' argument that the Forest Plan BiOp does not allow FWS to include illegal roads because they are not a "permanent condition" based on "up-to-date" records is unsupported by the record. Doc. 117 at 11. Defendants cite to the Forest Plan BiOp's reporting requirements that direct *USFS* to report on the current access conditions on the Forest. FWS1568. Nothing in the Forest Plan BiOp prohibits FWS from including illegal roads from metric calculations. Even so, this Court has already established that "the chronic problem of ineffective closures and unauthorized motorized access is permanent." Doc. 89 at 25. The record here supports this conclusion even more than it did prior to FWS amending its BiOp: Illegal use has now been documented in 4 out of the 11 years,

FWS6543, and two more illegal roads have been identified in 2023. FWS7542, 7543.

### ii. Defendants fail to explain why FWS diverged from USFS methodology.

As explained in Plaintiffs' Supplemental brief, USFS included illegal roads in metrics during Forest Plan consultation, FWS1218, and the Amended BiOp fails to explain why it cannot do so now. Doc. 110 at 7-8. Defendants claim that FWS adequately explained the divergence from USFS's approach of "erring on the side of the bear" by stating that including illegal roads in access metrics would "involve making 'inherently wrong' assumptions" and thus started to require USFS to report authorized and illegal access separately. Doc. 117 at 18, citing FWS6547. Defendant-Intervenors argue that continuing to utilize USFS's approach would run counter to this Court's decision in *Alliance for the Wild Rockies v. Gassman*, 678 F.Supp.3d 1249, 1282-3 (D. Mont. 2023). Doc. 115 at 9. Both arguments are misguided.

First, Defendants do not explain why it is harmful to categorize the full length of a road as "open" if illegal use is identified. While doing so *may* inadvertently include more road mileage than may exist on the ground, this gives grizzly bears the benefit of the doubt, as required by the ESA's "policy of institutionalized caution." *Crow Indian Tribe v. United States*, 343 F.Supp.3d 999, 1013 (D. Mont. 2018). On the other hand, ignoring illegal road use *does*

inadvertently exclude road mileage *known* to exist on the ground, assumes *no* effect to the species, and is also an "inherently wrong assumption" that harms grizzly bears.

Second, Defendants argue that to address the "inherently wrong" assumption associated with including illegal roads, FWS started requiring USFS to account for illegal roads and authorized roads in its monitoring reports. Doc. 117 at 19. This does not describe why FWS has diverged from USFS's approach. One would assume that this separate accounting would enable FWS to more easily account for illegal use.

Third, contrary to Defendant-Intervenors' claim, Doc. 115 at 9-10, continuing to utilize USFS's approach in including illegal road use in calculations would not run counter to this Court's decision in *Gassman*. In *Gassman*, the defendants made a false assumption "contrary to the evidence before them" regarding secure habitat on private lands that did not inure to the bears' benefit. 678 F.Supp.3d at 1282-83. Nothing in that case prohibits FWS from utilizing USFS methodology in analyzing impacts from illegal roads on grizzly bears. Similar to *Gassman*, excluding illegal roads from calculations assumes no impact from illegal roads and is contrary to the evidence before the agency and would not inure to the bears' benefit. *Id.*

### iii. Illegal roads are not "de facto" included in access metrics.

Defendants' claim that illegal use happening on the Project area is already accounted for in access metrics misrepresents and misapplies Wakkenin and Kasworm. *See* Doc. 117 at 9-10. Wakkenin and Kasworm acknowledged that illegal road use was perhaps happening at that time but "assumed all closures to be effective," and thus explicitly excluded illegal road use in their analysis. FWS5402. Thus, the access metrics reflect *no* amount of illegal access. *See* Doc. 110 at 8-9. Moreover, as Defendant-Intervenors acknowledge, "because subsequent Forest-wide monitoring data shows no 'clear trend, increasing or decreasing, in the amount of illegal use' documented over the years, the level of unauthorized use is assumed to be essentially static." Doc. 115 at 6 (citing FS1815). Therefore, the Agencies acknowledge a measurable and consistent level of unauthorized use across the Forest, FS1815, and that some illegal roads in the Project area will impact road density and core. FWS6544.[2] As explained above, FWS could and should utilize USFS's methodology and account for the known and

---

[2] Defendants incorrectly state that FWS "determined that there were no instances of illegal motorized access in the Knotty Pine action area that could impact the metrics." Doc. 117 at 12. As explained above, FWS concluded that "most" illegal roads would not impact metrics. FWS6544.

apparently consistent level of illegal road use to adequately understand the effects on grizzly bears.

Excluding illegal roads in metric calculations is arbitrary and capricious because "it assumes the effectiveness of closure devices; claims inability to account for the effects of unauthorized motorized access despite [USFS's] monitoring and databases, which demonstrate capacity to account for fluctuating conditions and new information." *Black Ram*, 687 F.Supp.3d at 1082. It is also contrary to best available science, namely the IGBC Report and Wakkinen and Kasworm, which require any roads not "effectively" reclaimed or obliterated be included in access metrics. FWS's exclusion therefore violates the ESA and the APA. 50 C.F.R. §402.14(g).

### c. Even if excluding illegal roads from calculations is appropriate, FWS's "qualitative" analysis is still inadequate.

FWS is required to provide a "detailed discussion" of effects of the action on grizzly bears, 50 C.F.R. §402.14(h)(1)(ii)-(iii) and is further required to utilize best available science when formulating an opinion. *Id*. §402.14(g). Defendants cannot show that the qualitative analysis does so here.

To begin, Defendants do not address the fact that the qualitative analysis entirely fails to consider the impact illegal roads may have on core habitat. Doc. 110 at 17. FWS acknowledges that the majority of human caused mortality occurs within 500 meters from a road and 36% occurs inside core. FWS6541. Because, as

explained above, FWS acknowledges that some roads may impact secure habitat, it must consider what impact illegal roads have on core, and thus grizzly bears. By failing to analyze the effects of illegal roads on core, FWS fails to consider an important aspect of the problem – that illegal roads reduce the availability of secure habitat for grizzly bears and may increase mortality and reduce reproduction. FWS1576.

Second, Defendants argue that Northrup (2012) adequately supports FWS's determination that because "chronic or persistent illegal motorized access is rare in any one location," FWS6543, "chances are low that females or their dependent offspring have encountered and been disturbed or displaced by illegal motorized uses," Doc.115 at 18; see also Doc. 117 at 14, citing FWS6545. Contrary to Defendants' assertions, Northrup (2012) does not support the premise that infrequent road use has little to no effect on grizzly bears. FWS6545.

As explained in Plaintiffs' Supplemental Brief, Northrup (2012) did not conclude that illegal roads have no effect on grizzly bears. Rather, it concluded that roads with lower levels of highly predictable use had less of an effect on grizzly bears than roads with unpredictable use. Doc. 110 at 12; FS020470. Defendants do not offer an explanation regarding FWS's inaccurate interpretation of this study. Additionally, Defendants fail to respond to the fact that grizzly bears' differing responses to traffic volumes are accounted for in the access metrics. The higher

thresholds for TMRD (which includes both open and closed roads) at 2 mi/mi$^2$, and

the lower threshold for OMRD (which only includes open roads) at 1 mi/mi$^2$

account for this concept. *See* Doc. 110 at 12-13.

In arguing that FWS's reliance on Northrup (2012) "is not new," Defendants

take the Forest Plan's citation of Northrup (2012) out of context and

mischaracterize both Northrup (2012) and the Forest Plan BiOp's reliance on it.

Doc. 117 at 14. Defendants claim that the Amended BiOp expands on the Forest

Plan BiOp's reliance on the study, which they allege "explain[ed] that grizzly bears

use habitats near restricted roads similar to unroaded habitat." *Id*. The Forest Plan

BiOp actually states that "[g]rizzly bears may not avoid restricted roads as much as

open roads, although traffic levels on those restricted roads can influence the

degree to which grizzly bears avoid the road." FWS1498.

> Northrup [(2012)] found grizzly bears in his southwestern Alberta
> study area used habitat near restricted roads similarly to unroaded
> habitat. By contrast, Mace et al. (1996, p. 1,402) found some grizzly
> bears in the Swan Mountains in Montana avoided closed roads
> receiving fewer than 1 vehicle per day.

*Id*. The Forest Plan BiOp found that the degree of avoidance depends on the

grizzly bear's "perceived mortality risk from amount of motorized use, degree of

local hunting pressure, history of mortality risk in the area, and association with

other nearby roads." FWS1498. Further, the Forest Plan BiOp acknowledges that

some bears may continue to avoid roads even after decommissioning, *id.,*

supporting the Recovery Plan's conclusion that that bears may avoid roads for generations. FWS5914.

The Amended BiOp does not disclose Mace (1996)'s determination that some grizzly bears avoid roads with almost no use at all, in contrast to Northrup (2012). Nor does it analyze the "degree of local hunting pressure, history of mortality risk in the area, and association with other nearby roads," FWS1498, regarding illegal roads. Therefore, FWS's reliance on Northrup (2012) is arbitrary because its interpretation in the Amended BiOp contradicts the findings of the study and FWS's interpretation and conclusions in the Forest Plan BiOp.

Finally, Defendants fail to acknowledge that this Court has rejected as arbitrary the rationale that illegal roads do not affect grizzly bears because "chronic or persistent illegal motorized access is rare in any one location (although a few areas are known to have persistent problems)." FWS6543; Doc. 110 at 13. In its Order, this Court found that FWS's determination that illegal road use in the Project area is "not chronic" is contradicted by the fact that "(1) illegal motorized use was observed in the Project area in two of the eight years for which USFS provided monitoring reports; (2) Yaak Valley Forest Council's survey of roads in the Project area 'highlighted multiple gated or berms roads that may have been bypassed by all-terrain vehicles or motorcycles at some time in the past' and documented 'a few user-created motor vehicle routes;' and (3) 'some Forest users

have, and will likely continue to break the law.'" Doc. 89 at 24-25. These same facts exist: (1) illegal motorize use has now been documented in 4 out of the 11 years, FWS6543; (2) the Forest Council surveys still highlight multiple illegal routes; and (3) FWS still concedes that "the Forest has been unable to curb all illegal motorized use." FWS6544. Defendants do not explain why, despite these same facts, the Court should now find that the illegal road use in the Project area is not chronic.

## III. CONCLUSION

For the reasons set forth above and in Plaintiffs' Supplemental Brief, the Amended BiOp violates fails to adequately analyze the impacts of the Project on grizzly bears in violation of the ESA and the APA.

Respectfully submitted this 8th day of November, 2024.

> /s/ Kristine M. Akland
> Kristine M. Akland
> CENTER FOR BIOLOGICAL DIVERSITY
>
> Andrea Zaccardi
> CENTER FOR BIOLOGICAL DIVERSITY
>
> *Attorneys for Plaintiffs Center for Biological Diversity, Yaak Valley Forest Council, and WildEarth Guardians*
>
> Timothy M. Bechtold
> BECHTOLD LAW FIRM, PLLC

*Attorney for Plaintiffs Alliance for the Wild*
*Rockies and Native Ecosystems Council.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 3,879 words excluding the

caption, table of contents, table of authorities, index of exhibits, signature blocks,

and certificate of compliance. Pursuant to Local Rule 7.1, a table of contents and

table of authorities are included in this brief.


*/s/ Kristine M. Akland*
Kristine M. Akland
CENTER FOR BIOLOGICAL DIVERSITY